The facts as they appear upon the record returned into this Court are that the petitioner, in the beginning, furnished a substitute under the act of April, 1862. After the passage of the act of 5 January, 1864, declaring persons no longer exempt by reason of having furnished substitutes, he became again liable to military service. He was not, however, enrolled or ordered into camp until 3 May, 1864. In the meanwhile he had made an engagement with the editor of a long established paper in the city of Raleigh, and actually entered into his service on 2 May, 1864. The editor has made a certificate, under oath, that petitioner is a necessary employee in his office, as prescribed by the act of 17 February.
The question is, whether he be exempt. *Page 337 
The difficulty seems to arise from what we consider a misapprehension of the true and proper effect of the act of 17 February, 1864, ch. 65.
Although, in respect to age, it fixes the "status" of every citizen at its passage, as liable or not liable to serve for the war, as they might be within or without the ages prescribed, yet it is not per se an enrollment or mustering into service so as to withdraw men from their pursuits and deprive them of the liberty of engaging in or changing them at pleasure, although these pursuits might operate as an exemption (522) from military duty.
We can perceive nothing in the policy or language of this law to prevent a citizen after its enactment, though subject under it to military duty, from accepting an office, or from engaging in any occupation which interest or inclination might suggest, provided it were done before he was actually called into service by enrollment. Up to that time the State had a right to the service of its citizens, and they had a personal liberty to engage in whatsoever business they might think proper. We are citizens of the State and also of the Confederate States. We owe duties to each; and if these duties are inconsistent, both cannot be performed. There is no principle by which such a conflict can be settled but that of the maxim, "prior est intempore, potoir est in jure." If one Government has appropriated a person to its service, by inducting him, in the way known to the law, into a place of duty, the other must yield its claim. The language of the act is, "From and after the passage of this act all white men, residents of the Confederate States, between the ages of 17 and 50, shall be in the military service of the Confederate States for the war." The terms are admitted to be comprehensive; but they must, we think, be interpreted in the modified sense of declaring simply, all persons within teh [the] ages to be subject to duty when called on. Such seems to be the sense in which the Government itself has undertood [understood] them; for it has put into action the official machinery necessary for actually enrolling and bringing into camp, and has not regarded the men as subject to military law until so brought in.
We make no question, because it seems to us plain, that the exemption granted by the act to necessary employees in newspaper establishments was intended to apply not only to such as were employed at the time of the passage of the act, but to such as might be introduced in their stead, or become necessary from time to time in the development (523) of the business.
It will then be seen that, although the petitioner was liable, under the act of Congress, to be called at any time into active service, yet, inasmuch as he was not so called and ordered into camp until after he had become an employee in the publication of the newspaper, certified to be necessary, he is exempt by virtue of the same act of 17 February. There is *Page 338 
but a narrow space of time between the employment and the enrollment. It is nevertheless sufficient to mark his case, and to distinguish it from a case of liability to enrollment and consequent liability to duty.
The judgment at chambers is affirmed, and the prisoner discharged; the costs to be paid by the officer, Scott.
Cited: Smith v. Prior, ante, 418; S. v. Harrell, 107 N.C. 943. *Page 339 
APPENDIX